United States Court of Appeals for the 4th Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. You can be seated. Let me welcome several groups. First of all, Judge Russell, we welcome to the bench a new district judge from Maryland. And we're glad to have you here with us this morning. Thank you. We also, as I understand it, have a class from the Regent University School of Law and Ms. Dysart, who is a former clerk in this court, as an instructor, and we're glad to have you here as well. All right, Mr. Byrne, whenever you're ready, we'll be glad to hear from you. Good morning, Your Honors. May it please the Court. My name is Jonathan Byrne. I'm here on behalf of the appellant in this case, Kimberly Kinder. Early on in the hearing that was held in this case on this issue, the district court noted that if Mr. White was trying to get to records of an attorney, we'd laugh him out of court because that wouldn't happen. Given the contours of the therapist-patient privilege as set forth by the Supreme Court and the close analytical links between it and the attorney-client privilege, the same result should have resulted in this case. The district court erred by ordering the disclosure of Ms. Kinder's privileged psychiatric records to Mr. White for his use during his criminal trial. The court in Jaffe noted that there could potentially be exceptions to the rule it announced, although the only potential one... Before you leave that, I at least think it's worthy of a little bit more statement other than the conclusion statement that it's just like attorney-client privilege. What we have here is a witness, a prosecuting witness, voluntarily coming into court to testify against an individual to take away potentially liberty, maybe life, I don't know, and who has a record of some mental illness or some type of problem there that the defendant wants to say, hey, this witness is taking a stand and there's something wrong here in the way in which she can testify because mentally she may not recall or do things and these records can help me do it. So that's kind of the stage of the patient privilege in the way it's set up here, and I understand the attorney-client privilege. I mean that's a whole different ball game because you're dealing with probably Fifth Amendment rights and other things in which he's disclosing things in which he can incriminate himself. But here's a witness, the sanction of which is the witness doesn't testify. Is that right? No, Your Honor, that's not correct. Tell me what the sanction is. If the witness, of course these records aren't really in the hands of the witness here, they're in the hands of a hospital, right? Correct, the medical providers, yes. So the sanction for I won't let my records go is what? The sanction to the witness? Yes. The witness in this case, they're... What happens to the witness if she says no, can't have my records? What happens to the witness? She testifies and... She says she's got to testify. Well, she is not asserting a privilege not to testify, Your Honor. It's not her trial. It's the defendant's trial. So she doesn't testify. The defendant says, okay, strike her testimony because she's not on trial. Then the government then has to deal with something, and who has the record is a third party. So I have a curiosity here. Why not go after the hospital and say, you cannot release my records, as opposed to the criminal trial, and seek an injunction against the hospital? And then if you litigate that, you don't go all messy up here with the defendant here in the case. Why is that not the procedure to do? Well, first of all... No, no, no, I want to know that. Why, when you say, when she says, you can't have my records, records is with the hospital. So really what the court is doing is ordering the hospital to turn their records over. Yes, sir. So why not bring the action against the hospital and say, I want an injunction against the hospital to keep them from releasing my records because these are protected by a privilege, and then have that thing litigated totally separate. You don't get Mr. White all into this thing here. Well, Your Honor, the reason Mr. White is all into it is because Mr. White is the one who made the requests for the records. He made them in a Rule 17c subpoena. I understand Mr. White's interest. His whole interest is he's trying not to go to jail and have other things. But she's trying to keep her records. That's her interest. He doesn't care whether she keeps her records or not. He wants the records for her. He'd rather her not to keep her records if the sanction is she won't testify. So his interest is, yeah, don't turn the records over. Then you can't testify. It would be the sanction probably in the criminal. But the government says, no, turn them over. You've got to turn them over. And get the hospital to turn them over. And the hospital turns them over. So hasn't the hospital violated something here? Well, the hospital was acting pursuant to court orders that the district court had ordered that when they came down. And it doesn't have HIPAA and all that stuff that go there and keep them from doing it. Is there nothing other than that that they come forth and do? They just sit here. Well, that's what we're here today to decide. Well, that's what I'm asking you is why didn't you go against the hospital? Your Honor, because it came up in the criminal case. And in the context of the . . . I understand, but the records are in the hospital. And her action is really against the hospital. They've got her records. She let them keep them. She has a patient privilege up there, HIPAA and all that stuff. They turn them loose, court order or whatever. And she made no action against the hospital. She says, hold, I want to stop that from happening. She asserted the privilege in the context of the criminal case, though, Your Honor. I'm not certain. And I understand what you're saying. There would be separate proceedings. But Ms. Kinder, in this case . . . It would be a lot cleaner than us having to be dealing with this criminal case. Because really what this is about is her patient privilege. And really what it's about is her records. And Mr. White really doesn't have anything to do with that, except to the extent that the hospital comes in to determine is there an exception to the privilege. But that's the hospital. They've got the records. They're the custodian of the records. Yes, Your Honor. And they've turned them over. They did. And Ms. Kinder sought stays before the district . . . And you have no problem with the hospital turning them over? We do. We did not think they should have been ordered to turn them over. What have you done against the hospital to turn it over? We have not done anything against . . . Have you now waived that with the hospital? I'm not certain in the context of our representation of Ms. Kinder that we would have been able to initiate a lawsuit on her behavior. You didn't. It's not a lawsuit. It was an injunction-type action that you were seeking against the hospital. It would have to be a civil suit. I'm saying . . . Have you done anything against the hospital? No, we haven't. So you're okay with what the hospital did? We're not okay with it because . . . But you did nothing to stop them. We tried to have this court review the order of the district court . . . the orders of the district court ordering disclosure before it went to trial. Ms. Kinder sought a stay both from the first disclosure order, which was the in-camera order, and the order disclosing them to Mr. White. So she tried. She did everything in her power in the context of the appeal . . . She ran in the hospital into it at any time. She did not, Your Honor. She put the hospital on notice at any time. They were on . . . She didn't tell the hospital, I have this action. I mean, it's real estate. Even when you're doing something, you file a list pendant. You say, listen here, I've got this going on. Because they could have released her. She said she's been injured. And the injury occurs, according to you, when they're released. And you allowed the hospital to do this without ever contacting the hospital. There was no contact to the hospital, aside from the order that was entered. I am perplexed with it. I mean, I don't mean to argument it with you, but I'm trying to understand this thing. I mean, if we've got criminal cases where when you have a privilege, you just go and bring up this action along with the criminal case. This is about a criminal case, really. But it has been morphed into . . . It's about two criminal cases, actually, yes, Your Honor. This is a criminal case. This is really . . . Her records and stuff is something totally separate. And I'm thinking procedurally, does the law not make sense? Are we going to have criminal cases where you can have four or five of these actions going on at the same time? Or are there procedures that this could happen differently? And I've got to believe your action . . . I wouldn't be willing to bet any hospital lawyer would come up and says, they probably get folks coming up there telling this all the time. Don't you send my records anywhere. And here is an action here. If I need to go and get a court order to say you can't send my actions, my records, then here it is. I don't disagree. I don't disagree that there may be another . . . My question is, did it occur to you? It didn't occur to us, no, Your Honor. Would it occur to you now? Now that you mention it, it has. I will note that there are plenty of cases, and they're discussed in the brief, where this issue came up in the context of criminal cases. They weren't ancillary civil matters. I'm okay with that, but guess what? If you keep doing something wrong, it doesn't mean it's right. I don't disagree with that, Your Honor. I mean, you've got to believe that. That sounds like it's a better procedure to deal with this kind of issue. It could be, Your Honor. We did not do it. I'll let you go for it. I wanted to have that, because that was on my mind, not to be argumentative, but to try to understand how the heck did this case get here? And I know there are instances, but you've got to really infer to get them in this kind of a context. You've got to really go somewhere to get them here. And I'm not saying you can't, but it's really, really stretching it, and I haven't seen it dealt with in that way.  Mr. Byrne, can you tell me what it is exactly you want us to do to order? In other words, if we agree with you, they should not have been disclosed. Yes, Your Honor. You can order that the records that are currently in custody of someone other than the custodian, who is their proper custody, that they be destroyed. How is he going to do his appeal if he doesn't have the records, presuming he's going to appeal on that ground? I believe that will be an issue on the appeal, but the records aren't . . . they are only part of the record because of the improper disclosure in the first place. We've got this issue in the defendant's criminal trial, so I don't know how we can do that at this point. If, Your Honor, if the court concludes that the privilege should have applied in this case, and the records should not have been disclosed, then the issue in Mr. White's trial solves itself, because he should never have had access to them. So the district court's decision not to allow them to be admitted wouldn't be error, or at most would be harmless error, though the actual content of them wouldn't be relevant to the analysis. We'll close that ground of appeal now. Yes, Your Honor. I suppose that would be the case. Yes. And what else is it you would ask us to do? Another option would be to preclude the further use of the records themselves in any further proceedings. There's still a sentencing to take place in Mr. White's case. There will be an appeal. There could be a new trial. So the court could set forth restrictions going forward in addition to So say those two options again. First, to foreclose the defendant from appealing? Not to foreclose him from appealing, but it would essentially moot that issue, because if he doesn't have a right to access those records in the first place, then the district court's decision not to allow the records themselves to be entered into evidence at his trial couldn't be error. Keep in mind that Mr. White was allowed . . . that he says he's entitled to it? Well, I . . . We're dealing with . . . because he's not even here. Well, I'm sure he was going to make the argument that he's entitled to the records. He can't make it because he's not here today, and he's getting ready to lose that if he doesn't have that representation. No, Mr. White is represented by counsel here today. But his whole interest, that's a different appeal. Well, it is, Your Honor, but in the same way that in a criminal case, if you had evidence that had been . . . should have been suppressed, but then for some reason the district court wouldn't allow the defendant to offer some evidence at trial to counteract it because it was irrelevant or hearsay or whatever, if the court decides that the evidence should have been . . . the other evidence should have been suppressed, the other issue goes away. Because if Mr. White never had a right to be in possession of those records, he couldn't move for them to be a part of the record. He couldn't present them to the jury, and so there could be no error in preventing him from presenting those to the jury. Are all copies under seal right now? Yes, Your Honor. That's my understanding. So there's no danger right now of them being released publicly without going through a court? No, Your Honor. What's the second option? The second option would be restrictions on the use of the records going forward. As I said, in a sentencing, in a retrial, after a successful appeal, and just further restrictions on their distribution. That's assuming he has a successful appeal? That's assuming that, yes, Your Honor. So are we at that issue yet? I mean, if he has an unsuccessful appeal, then what happens? In terms of the records themselves, if they're not stricken from the record, they'll still be in the record under seal. So certainly the— What's the harm you're having when they're under seal? Well, the harm is that they've been disclosed to the court, they've been disclosed to counsel, they've been— That's already done. But, I mean, after they're under seal and appeal is over, what's the harm then? They are still there. They're still in the court file when they should not be in the first place. Would you also be seeking an injunction as to counsel referring in any way to the contents of those records during the course of any allocution or representation at a particular sentencing? So in other words, you want us to enjoin a lawyer from making any reference to any misrepresentations or any mental condition or any emotional state or anything that occurred or bind him to any investigation that he occurred that transpired outside of those records or as a result of his looking at those records. If they only came out of those records themselves, Your Honor, yes, I think that would be the case. It's important to remember that in this case, there's a lot already in the public record with regard to Ms. Kendra's mental state that came out at her plea hearing and Mr. White was able to cross-examine her on it quite a bit at his trial. I see my time's up. You've got some time for reply. Let's hear from Ms. Cagle. Good morning. May it please the Court, my name is Jim Cagle. I do represent Mr. White. Three points I wish to make to this Court. One, Judge Johnston got it right. Two, if the appellant is said to have made a case, I submit she's not sustained her burden here to even show that she has any prejudice or that that which she objects to was actually covered by the ruling in Jaffe. Judge Johnston ordered the hospital to turn over the records. He did. In fact, the hospitals that Ms. Kendra provided in open court when she entered her first plea of guilty, and I emphasize first plea of guilty because there were two, because she changed her story, admitting having lied to the federal grand jury for the first time. Did those offer any resistance at all to doing that? Who offered any? The hospital today? They just handed them over? I'm unaware of any resistance. Here's how it played out. So Ms. Kendra's records is in the custody of a hospital, and a court dealing with a proceeding that has nothing to do with her records until someone brings it up in that proceeding, enters the order and says, give me those records, and the hospital just hands them over? I can't speak to that. But is that the way it works? Well, I can't speak to that because that's not part of what my role in this case was. I made the motion. Your role is to defend your client. Absolutely. I think, as I said, if the sanction was a striker testimony, you would love for that to happen for her to refuse to do it or criminal contempt. She's not going to want to deal with that because of it being contempt of an order, but that's a whole different ballgame. So I understand your role. You really have a role of trying to defend your client. This whole business of the patient privilege stuff is another issue that happens to be in the way of that. But what you want is just a record statement. It is, in fact, and it remains in the way. If the relief were to be granted, as suggested by the appellant, then Mr. White's due process appeal rights will have been infringed, i.e., during the trial of this case. In fact, there were two trials of this case, one of which resulted in a mistrial. So you got the records. You got the records. I had access to redacted versions of information that Ms. Kinder gave at a plea hearing that I and my client attended. So you have everything you want, except now you said he should have been introduced into evidence and you should be able to. That is. Are you saying you should look at that that was redacted, too? I haven't argued that because I don't know what was redacted. I'm just trying to see what is at issue here. No, no. The issue here is not what's been redacted. So only what's issued is what you actually saw. Yes. And your issue is I need the physical copies. I said the jury ought to have the physical records attended to my cross-examination of Ms. Kinder. That was denied me. That will be an issue in Mr. White's appeal, I anticipate. And, in fact, it has now been ruled upon twice by the judge. So the jury should have these records. You got all the evidence. You argued. You can ask her questions about it all day long. Of course, if she denies, you're probably stuck with it. I don't know how that works. That would be a fair assessment, yes. But for the most part, you go through it, and I assume you went through those records and you brought all that evidence out. I did, and the jury didn't care. Any of it you didn't get out? It's through the testimony that she offered. Is there anything I didn't get out? Yes. Only that which the government successfully objected to, and I'd have to comb the transcript. That's the whole department was objected to. Is that that they objected to you bring that up to? Yes, sir. I would. Yes, sir. And here's my point. But your only thing is you got all the evidence in, but you just don't have the physical records, and you wanted the jury to hold those records in their hand, but you got all the evidence in. Yes. That'll be an issue on his appeal. And I'm saying that if that relief requested by this appellant were to be granted, that Mr. White and I, as his counsel, would be precluded from referring that which is contained in the transcript of the trial, which is an awkward if not ridiculous situation to be confronted with. The procedural context of this appeal seems to me illogical. That's the only evidence in this case. She is. Your case, yes, she is. She was the primary witness. She's the other in conjunction with her husband there. Who's dead, yes. That's right. She is the primary accuser. She indicated in open court with me and my clients sitting there that she had an extensive history of mental illness, all of which is temporally connected to this proceeding. Your client has quite a history too. Yes, he does. I didn't say it's a pretty set of facts, but it is a set of facts, and Mr. White has the right to see it through. And I, as his counsel, have the obligation to see it through, and we ought not be infringed upon by this appellant in this case. What should we do? I think you should deny the appeal. She's not prejudiced. Examine the records. The records I submit do not fall within the context of that which is said to be privileged in Jaffe. It is, in fact, virtually identical to what she admitted in open court. Ergo, she has no privilege. She's already acknowledged it in open court. It was simply the facts that went with it. And, for example, documents, if you look at, I think it's joint appendix, about 125 or so, 125, 126, maybe a page or so off, but you will see what the judge ordered. Well, within most of what he ordered were assessments and triage notes. Well, Jaffe refers to notes of a therapist which attend both the diagnosis and treatment. I submit that a triage assessment where it says I'm seeing or hearing voices is simply historical to what she acknowledged in open court at her plea. Go ahead, Judge. Pardon? Is all this in our joint appendix? It's in the judge's memorandum opinion. Yes, sir. Yes, sir. It is. And, I mean, we're talking about a circumstance where if I did not make the motion under Rule 17 of the Criminal Procedures Rule, had I not made that motion, I submit that I would have been guilty of ineffective assistance of counsel. If I've got a woman who is the accuser in the alleged co-conspirator of my client who has this history, that's relevant and material to the defense of this case, most especially because she's delusional. Why don't we hear all this at one time? You should have. I had opposed this appeal to begin with. Your client's been found guilty. That's right. You're going through the appeal process. I will be. He hadn't been sentenced yet. We could have 10 of these witnesses out here and hearing 10 of these little small, these little ancillary issues here dealing with different privileges, and then your case is kind of coming on the side. I mean, is there anything that prohibits that from hearing them all? Well, I thought so, but you've already ruled on it, and I'm here. I don't think I should be here. I mean, to just be absolutely blunt, I think that all about where we are procedurally makes no sense, and this is not the case to rule about the contours of the privilege that is first announced in Jaffe, which I will submit to you lower courts have struggled with, obviously, from each of our briefs. They've gone all the way to even ignoring Jaffe. You're suggesting that the privilege has been waived. Is that correct? Absolutely. I am suggesting that, among other things. Yes. Okay, among other things. Yes, sir. Assume for me that the privilege was not waived. Assume for me that the privilege was not waived. How is it that the district court crafted an exception to this privilege that is consistent with Jaffe? Well, the rationale is that within the contours of Jaffe, of what is left to be developed by lower courts, there is, in fact, explicit. Didn't the Jaffe court reject outright the balancing test? No, no. Page 18 of Jaffe's opinion says as much. I quote it in my brief. It says as much. We leave it to the lower court. We are not going to say that in all circumstances are these therapy records inadmissible. And, in fact, that is an invitation to do that which Judge Johnston, in fact, did below. That's why I say he made no mistake. He found his rationale was that Mr. White's due process rights to a fair trial would be implicated and, indeed, violated if he did not allow access. He did it the right way. He looked at the records in camera, and he thereafter redacted information and gave some 32 pages of notes, which I will reiterate, would appear to be just what she talked about in the proceeding I attended, where the plea of guilty was held up because the judge wanted to decide, said so, whether this woman is competent to enter a plea of guilty. I mean, it's not as if we're exploiting something that's not a part of this woman's history. It's a part of it. And I might add the jury heard that to some extent and disregarded it. They found my client guilty. And if you were to take this issue, and it's not an insignificant issue, what the contours are, as a court of appeals, the second highest court in the United States, then if you're going to hear such a case, you should hear it where a defendant does not get the records. And we argued in that circumstance. Ms. Menendez pled guilty to arson in her trial. Were these records introduced in that trial, or were they a part of it? Yes, her plea agreement was. But, I mean, were these records, did she allow the use of these records in her trial? She didn't have a trial. She pled to an information. I mean, were they brought forth as evidence or any form of it? I know there's testimony in terms of her psychiatric condition there. I mean, it's right here in this order. It says that she testified that she suffers from bipolar disorder, schizophrenia, and depression. And she all explained all these medications. Did these records arise in the context of that plea hearing? They did, not the physical records, but her history of it. The judge decided that he would not look at the records because of this particular motion here. So the judge ordered these four hospitals to then, the orders directed to the hospitals, to then turn over these records. And they just did. I don't know if they just did, but obviously, to my knowledge, there was no objection made by anybody. I don't know what their duty was from Ms. Kender. I'm just finding it troubling. If a hospital has your records and a court, I guess from any jurisdiction, just sends an order to you and says, give me those records, you do it, and you do nothing. Let me raise one point about that. This woman had signed an authorization for the probation officer to turn over those records to the very judge. In her trial. The very judge. I thought that was true. Oh, every defendant who's found guilty has to sign that authorization. At least her records to the probation officer. The probation officer sitting in the courtroom at the time she entered her first plea, and I submit the second plea also, had the records in his possession. That's what I was asking earlier. Did they have those records? They had the records, and Judge Johnston would be obligated to look at them. That's not being challenged here. No. No, it's not being challenged here. No. But can't she have a privilege and then release it for a limited purpose that deals with her own case that doesn't go to you? I mean, the purpose of here has to deal with her own case. Is that waiving it and letting everybody else see it? I don't know that I can answer that. I don't know that I have to in this context. Maybe what you're saying. No, but what I'm saying is she already waived it when she provided the information initially. She provided. But she's waiving it such as sort of in the same sense as she went to a different psychiatrist and said, you can see my records. She's not saying everybody else can see them. Well, she signed an authorization for the court to see them. She did that. She did that through a probation officer who works for the judge. Absolutely. But not every court. I understand that. But here's the point of why that's not necessarily something that this court needs to be hung up on, because nobody argued that. And the judge meticulously said, unless and until it's turned over for an in-camera review, I'm not going to look at these records. So I submit you should deny this appeal and allow Mr. White his appeal rights when he has his day in this court again. Thank you very much. What harm would there be to you if we had just held a decision, in this case an abeyance, until White's appeal came to us? I don't know that there would be any harm to that, but I don't know why you'd do that. I think he's going to have to argue it from the record, and it'll be in the record. The Chief is asking, how's that going to hurt you? Well, she's the appellant. It's not going to hurt her. That'd be the point. There's no prejudice to the appellant. You don't think it's going to hurt anybody to do that? I think not. I think this is much ado about very little. Thank you. Let's see if Mr. Byrne agrees with you. Mr. Byrne. Mr. Byrne. I gather you have a concern about it coming up at sentencing. Well, Your Honor, I don't know necessarily that sentencing will cover those issues. It certainly could, and sentencing has been delayed. In that case, it was originally supposed to happen this past Monday. It's now been pushed back to November. November what? November 21st, I believe. Certainly, a decision before that would be preferable. However, given everything else, if the decision in this case was held until Mr. White's appeal was heard, I don't think there would be any great further prejudice to Ms. Kinder. I wanted to address a couple of things. Mr. Cagle. You said it. You kind of lowered your voice at the end. I don't make sure I heard what you just said. I'm sorry. If we hold it until the end, you don't see any problem? Well, I don't think there would be any real further prejudice to Ms. Kinder. That's all we can stop anyway is further prejudice. I mean, we can't stop what already has happened. Well, yeah, true, by definition. Okay. All right. Mr. Cagle brought up issues of waiver. I'll direct the court to footnote one of Judge Johnson's opinion. That's on page 99 of the joint appendix and footnote four on page 109 of the joint appendix. In both situations, the court addresses waiver, and particularly in footnote four, says that the parties agree that Ms. Kinder did not waive the privilege simply by answering questions in open court. Mr. White didn't file any cross appeals in this case, and so he has waived that issue. Similarly, the issue of what part of these records are privileged, we did not deal with that in our brief. We didn't take issue with Judge Johnson's designation of what part of the records were privileged and what were not. Mr. White didn't file a cross appeal seeking to challenge those designations, and therefore that issue is also waived. I understand the records were turned over to the probation officer? Yes, Your Honor. And is that some type of a waiver or not? No, Your Honor, and that is the subject of the footnote one. Why were they turned over to the probation officer? In preparation for sentencing, for Ms. Kinder's sentencing. And there's nothing privileged in there? I mean, how is that information going to be helpful for sentencing for her? The fact that she has a lengthy history of mental illness often plays into decisions to impose a sentence either below the guideline range or where a sentence. It was for her benefit, for the most part, is the reason she wants to allow these records. Within the limited context of her sentencing hearing? Yes, Your Honor. And for the record, she has been sentenced. She filed no appeal from her sentence or her plea, so that part of the proceedings are complete. Judge Wendt . . . But she has this privilege, and the purpose of the privilege is her privacy rights, and she doesn't want others to know, but she allows them to be released to others if it can be used to benefit her. For a limited purpose under the auspices of the court? Yes, Your Honor. But she's concerned about others seeing those records if someone else can benefit from them, and that's the injury is that others will see these records in the redacted form, because I understand there's some very damaging things, and I'm totally in agreement with you on that. It has nothing to do with this trial. I would totally believe that record should be redacted. But for the things that deal with the general depression type things of that nature, you say she has a privilege on that, and, well, it's already out there, but you can't use it any further. Correct. And I think the idea that the privilege can be waived or set aside by consent of the person to whom the privilege belongs is a separate question from whether the privilege can be violated by a court order. I'm going to leave this alone, but I do want . . . I think it is worth, at some point, I don't know if it's in advance or how it comes up, this whole business of this order being toward the hospital, and the hospital just reaches on a shelf and says, here. If I could address that, Judge Weber. Because they are the custodians of this record. Yes, Your Honor. Representing . . . they have a duty. They have something to your client. It's a federal type issue with HIPAA. It really gets you there. But a hospital can't just hand those records over like that. They've got to at least offer some level of, wait a minute, there's a privilege. Are you . . . and then maybe have a hearing where they're all in there together, and then it happens. Then you can appeal from that because the hospital is sitting in there. Then the defendant in the case becomes not Mr. White, but the hospital, which really makes a lot more sense when we do it that way. Yes, Your Honor. I see my time's up. Could I address just that one very brief point? Part of the reason why the hospitals may have, as you put it, simply turned around and picked the things off the shelf, is the West Virginia version of this privilege, which is in the West Virginia Code, specifically has an exception for records being released due to a court order. And Mr. White's initial request, in addition to citing the federal rules of criminal procedure, cited that West Virginia statute. And the district court's first disclosure order cited that statute. And that's really the first error in this case. I can only bet that when enacting that statute, they contemplated that the hospital would be part of that proceeding. It wouldn't just be a court order out of the blue. They wouldn't have anything out of it, and they would not make any effort to do anything except, oh, I've got a court order, boom. That may or may not be true, Your Honor. But the first error was the court saying to Mr. White, Mr. White, this is a federal case. This is not a state case. We're talking about federal law here, not state law. Was the order issued with notice to you? Did you have notice before the order was served on the hospital? Yes, Your Honor. You knew that order was being issued. Yes, the government asserted the privilege to the initial request, and then our office was brought in as Ms. Kinder's counsel to proceed. You filed an objection? I made an objection on the record, yes, Your Honor. All right, thank you. Thank you.
judges: William B. Traxler Jr., James A. Wynn, Jr., George L. Russell III